OPINION OF THE COURT
Jean T. Schneider, J.
This summary holdover proceeding is based upon a claim that the respondent, a rent-stabilized tenant, charged her roommate more than the roommate’s “proportionate share” of *737 the rent in violation of section 2525.7 (b) of the Rent Stabilization Code (9 NYCRR). The matter came before me for trial on September 30, 2002.
Certain facts are not in dispute. Respondent Modesta Gonzalez has lived in the subject two bedroom apartment for eight years. During that time her daughters, who once shared the apartment with her, grew up and established their own homes. From May 2001 through December 2001, Ms. Gonzalez shared the apartment with Bienvenida Minaya. The two women had acquaintances in common, and the apartment sharing was arranged by Ms. Minaya’s son, who lived nearby.
Ms. Gonzalez provided Ms. Minaya with a bedroom of her own, fully furnished with a queen sized bed, two dressers, and a mirror. Ms. Gonzalez also provided pillows, bed linens, and towels. In addition to exclusive use of one bedroom, Ms. Minaya had shared use of the apartment’s living room, kitchen and bathroom. Ms. Gonzalez retained exclusive use of the other bedroom. Ms. Gonzalez paid all of the utility bills for the apartment, including electricity, gas, telephone, and cable TV, without any contribution from Ms. Minaya. Ms. Minaya paid Ms. Gonzalez $90 per week during her occupancy.
Ms. Minaya testified at trial as petitioner’s witness, as did Maria Marosa, Ms. Minaya’s home attendant, who began working in the apartment in October 2001. Ms. Gonzalez testified on her own behalf. Ms. Gonzalez and Ms. Minaya contradicted one another with respect to certain aspects of their arrangement. Ms. Gonzalez testified that her original arrangement with Ms. Minaya gave Ms. Minaya the right to use Ms. Gonzalez’s telephone, and that Ms. Minaya in fact used Ms. Gonzalez’s phone to call her daughter on a regular basis during the early months of their co-occupancy. Ms. Minaya testified that she never used Ms. Gonzalez’s telephone. Both women agreed that Ms. Minaya installed her own telephone in her room in September 2001, four months into her occupancy. Ms. Minaya testified that she used only a cell phone prior to that time.
Ms. Gonzalez testified that in the early months of their arrangement, she prepared meals for Ms. Minaya, who was not well, and that the two of them sometimes ate together in the living room. This arrangement ended, according to Ms. Gonzalez, when Ms. Minaya was hospitalized in September 2001. Upon her release from the hospital, Ms. Minaya began receiving regular home care from Ms. Marosa, who prepared all of her meals from October 2001 onward. Ms. Minaya denied that Ms. Gonzalez had ever prepared any meals for her.
*738 Ms. Gonzalez testified that she supplied Ms. Minaya with cable television service in Ms. Minaya’s bedroom during the entire tenancy. Ms. Minaya testified that she had never had cable service in her bedroom.
It is certainly clear from the uncontroverted evidence at the trial that Ms. Minaya’s payment of $90 per week covered more than just rent. At a minimum, it also covered the bedroom furniture supplied by Ms. Gonzalez, the bed linens and towels also supplied by Ms. Gonzalez, and the gas and electrical service Ms. Gonzalez paid for in the apartment. Whether it also included telephone and cable service and food preparation is a matter of dispute.
I find, based upon Ms. Gonzalez’s credible testimony, that the agreement between the two women included access for Ms. Minaya to Ms. Gonzalez’s telephone. I do not credit Ms. Minaya’s claim that she relied solely on cell phone service in May, June, July and August 2001. Ms. Minaya decided to install her own phone in September 2001, but there is no evidence that Ms. Gonzalez ever restricted her access to Ms. Gonzalez’s phone.
Ms. Minaya’s claim that she prepared all of her own food prior to October 2001 but required a home attendant to prepare food for her full time, seven days a week, starting in October 2001, is not credible. I credit Ms. Gonzalez’s testimony that during the early months of their co-occupancy, she prepared meals for Ms. Minaya, but stopped when Ms. Minaya’s home attendant service started.
Ms. Gonzalez’s cable television bills did not support her claim that she supplied cable television service to the television in Ms. Minaya’s room. If there was an unauthorized and unbilled cable connection in Ms. Minaya’s room, it did not cost Ms. Gonzalez any money and is not relevant here. There was no testimony that Ms. Minaya used the cable television connections in other parts of the house.
Section 2525.7 (b) of the Rent Stabilization Code provides: “The rental amount that a tenant may charge a person in occupancy pursuant to section 235-f of the Real Property Law shall not exceed such occupant’s proportionate share of the legal regulated rent charged to and paid by the tenant for the subject housing accommodation. For purposes of this subdivision, an occupant’s proportionate share shall be determined by dividing the legal regulated rent by the total number of tenants named on the lease and the total number of occupants residing in the subject housing accommodation. However, the *739 total number of tenants named on the lease shall not include a tenant’s spouse, and the total number of occupants shall not include a tenant’s family member or an occupant’s dependent child.”
The Appellate Term held in Ram I LLC v Mazzola (2001 NY Slip Op 50073[U]) that section 2525.7 (b) gives rise to a cause of action to terminate a rent-stabilized tenancy where it is alleged that the tenant has charged a roommate in excess of the roommate’s proportionate share of the regulated rent. The tenant in Mazzola charged her roommate more than the total regulated rent that the tenant was paying for the apartment. The appeal was taken from the trial court’s denial of a motion by the tenant to dismiss the proceeding for failure to state a cause of action. The appellate court hence determined only that a landlord has a possessory cause of action against a tenant for overcharging a roommate, and did not address what constitutes an overcharge when a roommate’s payment includes contributions toward costs other than rent. There have been no other reported cases interpreting section 2525.7 (b) in the almost two years since it was adopted.
Petitioner’s argument in this case is a simple one. It is agreed that the regulated rent for the subject apartment is $598 per month. Petitioner argues that Ms. Minaya’s “proportionate share” is half that, or $298 per month.* As Ms. Minaya paid $390 per month ($90 per week for 52 weeks in a year is $4,680, divided by 12 months is $390 per month), petitioner argues that Ms. Gonzalez violated the regulation and that her tenancy can be terminated.
Respondent counters that when furniture, utilities, and other services are taken into account, Ms. Minaya did in fact pay her “proportionate share” of the costs associated with living in the apartment.
Ms. Gonzalez supplied Ms. Minaya with furniture, bedding, linens and towels, and with gas, electricity, and telephone service. All of these services were covered by Ms. Minaya’s $90 per week payment. Section 2525.6 of the Rent Stabilization Code, a parallel provision to section 2525.7, which applies to subtenancies rather than co-occupancy arrangements, permits a tenant to charge a subtenant a surcharge of 10% when an apartment is sublet with furniture. Assuming Ms. Minaya’s *740 proportionate share of the rent alone was $298, a similar allowance for furniture in this case would be $29.80. Ms. Gonzalez established at trial that her average bill for electricity and gas service during the eight months during which Ms. Minaya shared her apartment was $86.20. Ms. Minaya’s proportionate share of these costs would be $43.10. The addition of these two entirely reasonable and quantifiable additional costs would raise Ms. Minaya’s “proportionate share” from $298 per month to $370.90 per month.
This leaves an additional $19.10 per month to cover the other less quantifiable items supplied by Ms. Gonzalez: the bedding, linens and towels, use of the telephone, and food preparation for the ailing Ms. Minaya when she did not yet have access to home care.
On this record, I cannot find that Ms. Gonzalez overcharged Ms. Minaya. The amount the two women agreed upon as rent was a reasonable approximation of Ms. Minaya’s fair share of the rent plus utilities, furniture and other items provided by Ms. Gonzalez. There is no evidence here that Ms. Gonzalez made a profit from her rent-regulated apartment. It would work a grave injustice if petitioner were able to end Ms. Gonzalez’s tenancy because she exercised her legal right under section 235-f of the Real Property Law to share her under-occupied apartment with someone who needed a place to live, and charged that individual a reasonable approximation of the individual’s fair share of the apartment’s expenses, including rent.
Accordingly, the proceeding is dismissed on the merits.

 The record reflects that a boyfriend of Ms. Gonzalez stayed in the apartment for part of the time that Ms. Minaya lived there, but it was not established that he resided there, and he apparently left for good in October 2001.