OPINION OF THE COURT
Anil C. Singh, J.
The sharing of rent regulated apartments is a fact of city-life. This right is protected by statute (Real Property Law § 235-f). Tenants have been free to negotiate the terms of rent-sharing agreements, and in the absence of profiteering or un *413 duly disparate bargaining power, courts respected such agreements. This landscape changed when the Division of Housing and Community Renewal (DHCR) promulgated section 2525.7 (b) of the Rent Stabilization Code (9 NYCRR [RSC]) making it a violation of the Rent Stabilization Code for a tenant to charge a roommate more than the latter’s “proportionate share” of the apartment rent.
In this case, plaintiff Susan Bryant sues for a rent overcharge in the amount of $6,104.20 and treble damages on the ground that defendant Kimberly Carey breached section 2525.7 (b) by charging her more than the proportionate share of the rent. The court has been unable to find a reported case where a roommate has sought damages for violation of this provision.
The trial was held before me on March 20, 2003. Both parties are self-represented. Ms. Carey is the tenant of record of a rent-stabilized four bedroom apartment in Manhattan. Ms. Bryant was her roommate from December 1, 2000 to July 31, 2002, when she moved out. Ms. Bryant testified that in 2000 she met Ms. Carey, who was looking for a roommate, inspected the apartment and accepted the terms of the share. She agreed to pay $1,150 per month for what was designated “the big room” and was entitled to share the rest of the apartment, except for the bedroom occupied by defendant and another bedroom, denominated “the small room” which was rented to another roommate.
During her occupancy Ms. Bryant found out the actual rent of the apartment, $2,354.48, and at some point became aware of RSC § 2525.7 (b). On April 1, 2002 Ms. Bryant moved into the small room and paid $850 in rent and $35 for utilities. In July, 2002 Ms. Bryant moved out altogether and subsequently demanded a refund of all monies paid by her in excess of the proportionate share as defined by the statute. Ms. Carey refused to acknowledge her demand and this action ensued.
Ms. Carey testified that she had been a tenant of this apartment for several years. She had decided to find roommates to share the rent of $2,354.48. She occupied one of the four bedrooms and rented two others, one, the larger, for $1,150 and $50 for utilities and one, the smaller, for $850 and $35 utilities. In late 2000, she advertised in the Village Voice and on the Internet. She received approximately 100 responses and chose plaintiff as her new roommate. All appeared to be well until this action was filed. She confirmed that both rental rooms were occupied during plaintiff’s stay in the apartment except for one month. She claimed she paid the cable bill for the apartment herself.
*414 Ms. Carey testified that she became aware of the proportionate rent regulation in May 2002. However, she did not change her practice because she did not believe she was profiteering from the rental. She stated that she had worked hard to create a comfortable well-furnished apartment with a television, VCR, kitchen appliances, dishes, pots and pans. In Ms. Carey’s view plaintiff accepted the terms of the share offer, paid her share of the rent and benefitted from the full use of the apartment and its amenities. Accordingly, Ms. Bryant was not entitled to a reimbursement of her monies.
Under RSC § 2525.7 (b) the proportionate share is defined as the registered rent of the apartment divided evenly by the number of tenants and occupants living therein, excluding tenant’s family members and the occupant’s dependent children. This calculation makes no express provision for the situation in which the tenant supplies much of the furnishings of the apartment. It imposes an even share division, without reference to relative desirability of the individual accommodations. A tenant who charges a roommate more than her proportionate share is deemed to have violated the Rent Stabilization Code.
Courts have held that a landlord may bring an eviction action against a tenant who has allegedly violated this section. (Ram 1 v Mazzola, 2001 NY Slip Op 50073[U] [App Term, 1st Dept]; 719 W. 180th St. v Gonzalez, 193 Misc 2d 736 [Civ Ct, NY County 2002].) However, the section is silent as to whether DHCR intended to allow a roommate who has been overcharged to bring an action against the tenant.
Since the regulation is silent as to whether a cause of action exists, a three-prong test must be applied to determine whether a right of action may be implied: “(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.” (Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]; see also Pavlou v City of New York, 300 AD2d 120 [1st Dept 2002].) Here, all three elements are met. Plainly, the section was intended to protect roommates from profiteering tenants. Recognizing the right of a roommate to bring an action against a tenant that overcharges protects roommates and acts to deter tenants seeking to profit from rent stabilized tenancies. The right is consistent with the regulatory scheme. Tenants who have been overcharged by *415 landlords have a cause of action (RSC § 2526.1). Subtenants also have the right to sue tenants for an overcharge (RSC § 2525.6). Furthermore, a landlord has a cause of action under this section. Therefore, it follows that a roommate — the party actually aggrieved by paying rent in excess of the proportionate share — can sue for damages.
Accordingly, I hold that a roommate has a cause of action under RSC § 2525.7 (b). I reject the defense that the parties’ share agreement trumps the statute. DHCR promulgated section 2525.7 (b) to protect roommates from being overcharged and the contractual defense would eviscerate the statute.
As noted above, the proportionate rent provision does not take into account that the apartment may come with furnishings and other amenities. In contrast, section 2525.6 of the Rent Stabilization Code, which relates to the subletting and assignment of apartments, permits a tenant to charge a subtenant a 10% surcharge over the legal regulated rent when the apartment is sublet fully furnished. The Civil Court in 719 W. 180th St. v Gonzalez (supra) allowed such an allowance in determining the proportionate share of rent between roommates. That case is readily distinguishable from the case at bar. There the landlord brought an action to terminate the tenant’s rent stabilized tenancy on the ground that the tenant had violated section 2525.7 (b) by charging her roommate in excess of the proportionate rent. The court found that the roommate was being charged her fair share of the apartment’s expenses and opined that under the circumstances eviction would constitute a grave injustice. Here, the roommate is seeking reimbursement of the excess monies she paid in violation of the Rent Stabilization Code.
Furthermore, the 10% surcharge found in RSC § 2525.6 is allowed where the tenant has sublet the apartment and given exclusive occupancy rights of a fully furnished apartment to the subtenant. Under section 2525.7 (b) the tenant retains possession except that she entered into a sharing agreement with a roommate. The tenant continues to have full use of the apartment and its furnishings. I conclude that the two sections are not in pari materia and decline to construe them together.
In this case, there are clearly three individuals involved: the tenant (defendant) and two roommates (including plaintiff). It is undisputed that the rent for the entire apartment for the period in question was $2,354.48. Dividing this amount by three, the share for each room should be $784.79. Plaintiff, during the 16 months she lived in the large room, paid $1,150, *416 $365.21 over the proportionate share. While she lived in the smaller room for four months, she paid $850, $65.21 over the share. The actual number of months for which plaintiff is entitled to reimbursement is 14 for the large room, four for the small room. The statute did not become effective until January 1, 2001 and defendant testified without contradiction that the large room was vacant for one month during plaintiffs stay. Accordingly, the total overpayment comes to $5,373.78.*
At trial, much testimony and argument was devoted to the issue of whether or not defendant’s departure from the terms of the statute was willful or not. Plaintiff has asked for treble damages. The statutory authority for these damages is not articulated. There is no express provision in section 2525.7 (b) that imposes treble damages on a tenant who overcharges a roommate. Two other sections of the Rent Stabilization Code allow treble damages. Section 2525.6 permits a subtenant who was willfully overcharged to recover treble damages from the tenant. Section 2526.1 (a) (1) imposes treble damages on an owner who willfully overcharges a tenant. However, these sections do not apply because Ms. Bryant was a roommate and not a subtenant or owner. The court will not read such a provision into section 2525.7 (b) by borrowing from other inapplicable sections of the Rent Stabilization Code.
Even if the sections were applicable, I find that defendant’s behavior was not willful. While ignorance of the law is not a defense, it is clear that Ms. Carey, while charging Ms. Bryant more than her proportionate share, was not profiteering. Unlike the individuals who use their rented apartment to generate a stream of income for themselves, Ms. Carey was not accepting from her roommates, in toto, more rent than she was paying the landlord; it was an authentic rent share. I find that Ms. Carey acted in good faith upon the mistaken belief that the rent was being fairly allocated as Ms. Bryant was getting full use of the apartment and its amenities. Accordingly treble damages are denied.
Ordered that the Clerk of the Civil Court enter judgment in favor of the plaintiff and against the defendant in the sum of $5,373.78 with interest thereon at 9% from January 1, 2001, together with costs and disbursements as taxed by the Clerk.

 14 months X $365.21 = $5,112.94 and 4 months X $65.21 = $260.84.